Houghton<br>v.<br>Hapgood.

---

## PAUL GROUT *et al. versus* HUTCHINS HAPGOOD, Executor.

Where land devised, which had vested in the devisee, was sold by the executor and bought by himself, and afterwards the heirs of the devisee affirmed the sale, it was *held*, that in the distribution of the testator's estate, the administrator, and not the heirs of the devisee, was entitled to the proceeds of the sale.

A testator devised to his son his homestead, which was under mortgage, and directed that the son should pay one half of the incumbrance and that the other half should be paid out of the testator's estate; and he further directed, that after the payment of his debts and certain legacies to his daughters, the overplus should be "divided among all his children, after first taking from such overplus enough to clear the homestead for his son, if not otherwise done." The homestead was sold by the executor and bought in by him, and the sale was affirmed by the heirs of the son, who had died insolvent. It was *held*, that the provision for applying the overplus to clear the homestead from the incumbrance had been defeated by the sale.

THIS was an appeal by the heirs of John Grout, from a decree of the judge of probate of this county, ordering a distribution of $15,676·38 among the heirs, devisees and legatees of Jonathan Grout, deceased, testate.

The reasons of appeal are ;—1. Because the judge has ordered that the share of the testator's estate, to which his son John Grout, deceased, was entitled, be paid to the administrator of John, instead of his heirs ; 2. Because the sum ordered to be paid as the share of John, is much less than his heirs or administrator is legally entitled to receive.

The parties stated the following case.

Jonathan Grout, the testator, died on the 9th of September 1807, and his last will was afterwards proved, both in this State and in Vermont, and Hutchins Hapgood was appointed executor and accepted the trust.

The will contained the following bequest. " I give unto my son John, my homestead farm, in Petersham, together

with all my farming utensils, together with two bonds or obligations wherein my son Jonathan promises to indemnify me against a certain mortgage of said farm to Abigail Hale, together with all the notes and accounts I have against him, said Jonathan, and should Jonathan be unable to pay the sums named in his obligations to me, I order that John pay the one half the deficiency, and the other half shall be paid out of my other estate, John to come into possession of it on the first day of April following my decease, that is to say, two thirds of it, and the other third at his mother's decease."

In another clause the testator says, — " The rest and residue of my estate I give, after paying my debts, to my daughters, Sarah Brooks, Betsey Hapgood, Lydia Houghton, Dolly Hapgood and Sukey Grout, always providing that if this residue shall exceed one thousand dollars in value, to each daughter, the overplus shall be divided among all my children, after firstly taking from such overplus enough to clear the homestead farm for John, if not otherwise done."

The executor proceeded in the settlement of the estate and represented it insolvent, both here and in Vermont. Whereupon all the real estate was sold, and the executor became the purchaser of most of it, including the homestead farm. In 1819 he settled what he considered to be his final account, in the probate court in this State; but such proceedings were afterwards had before the judge of probate, and before the Supreme Court of Probate, that his accounts as executor were opened, reëxamined and stated anew, and in his hands was found the sum above mentioned, which he ought to have accounted for, and which he was ordered to pay over under the decree of the judge of probate from which the appeal in this case is taken.

In relation to the lands which the executor had unnecessarily sold, such proceedings were had in the Supreme Court of Probate, that the heirs, devisees and legatees interested therein, were authorized, if they saw fit, to affirm the sales where the executor had directly or indirectly become the purchaser, and, on their giving releases of the lands, be entitled to the avails of such sales, with interest thereon.

Grout
v.
Hapgood.

John Grout died on the 12th of September 1807, upon the homestead; which afterwards being sold by the executor, was bought in by him, and after the passing of the decree last mentioned, the appellants executed releases to him of their interest in the same.

Jonathan Grout, the son of the testator, died without having paid any thing towards extinguishing the incumbrance on the homestead, nor has the executor made any such payment out of the estate which came into his hands.

The estate of John Grout was represented insolvent, and proved to be so, and claims against it are still unsatisfied.

The personal property of the testator was insufficient to pay his debts, and the sum of $15,676·38, decreed to be distributed, arose from the sale of real estate in the manner above mentioned.

The proceedings before the judge of probate and in the Supreme Court of Probate, in relation to the settlement of the testator's estate, were made a part of the case.

*J. Davis* and *C. Allen*, for the appellants, placed but little reliance upon the first reason of appeal.

*Oct. 5th.*

They contended, that as the testator's son Jonathan was unable to pay any part of the mortgage on the homestead, one half of it was, by the first recited clause of the will, to be paid by the executor, and that by the residuary clause, which they said was accumulative, the overplus remaining after the payment of 1000 dollars to each of the daughters, was to be applied to extinguish the other half of the incumbrance. There was, by necessary implication, a legacy to John Grout, of the whole amount of the incumbrance; whereas the decree is, that only one half of that amount shall be paid to his administrator. 2 Bl. Com. 381; *Roe* v. *Summerset*, 5 Burr. 2608; 4 Dane's Abr. 589; 2 Roberts on Wills, 8; *Ridges* v. *Morrison*, 1 Bro. C. C. 389; *Hooley* v. *Hatton*, ibid. 389, note; *Currie* v. *Pile*, 2 Bro. C. C. 225; *Jennison* v. *Hapgood*, 7 Pick. 1.

John Grout, had he lived, would have been entitled to possession of the homestead in 1808, and the fund now in the hands of the executor should be distributed in such manner

14 *

Grout
v.
Hapgood.

as to allow John's representatives interest from 1809, when this land was sold, and not merely from 1815.

John's administrator could have no concern with the home-stead until he should sell it under a license of court for the payment of John's debts. The rents and profits, therefore, of this land from 1808 until the time when the heirs released their title to the appellee, and consequently the amount of interest which is allowed as a substitute for those rents and profits, should be paid to John's heirs, and not to his ad-ministrator. *Gibson* v. *Farley*, 16 Mass. R. 280.

*Hoar* and *Newton*, for the appellee, and *Brooks*, for several of the devisees, objected, that if the first reason of appeal was not sustainable, the administrator, and not the heirs of John Grout, should have claimed the appeal. *Downing* v. *Porter*, 9 Mass. R. 386.

They contended, that the heirs of John, by their release, had affirmed the sale, and so, by relation, the land was con-verted into personal estate at the time of the sale, and was to be distributed accordingly.

They further insisted, that in pursuance of the will, only one half of the incumbrance on the homestead was to be dis-charged out of the testator's estate.

*Oct 9th.*

WILDE J. delivered the opinion of the Court. The counsel for the appellants have with great propriety declined an argument in support of the first reason of appeal, for it is clear beyond question, that the distributive share of the deceased belongs to his administrator, as the legacy vested in John Grout.

This point being decided in favor of the appellee, his counsel contend that no appeal will lie in the names of the heirs, the estate of the deceased being admitted to be in-solvent.

This may be so, but we do not dismiss the appeal on that account, as we think it may save future controversy to de-cide the case on its merits, and we do not think the decree of the judge of probate is in any respect erroneous

The appellants claim under two clauses in the will of the late Jonathan Grout. By the first clause the homestead farm is given to John, together with two bonds from his

brother Jonathan, whereby he had obligated himself to in-
demnify the testator against a certain mortgage on the home-
stead to Abigail Hale ; and in case Jonathan should be un-
able to pay the sums mentioned in his obligations, then the
will directs that one half of the deficiency should be paid by
John, and the other half be paid out of the testator's other
estate.

It is agreed that Jonathan the son was not able to pay,
and that he died without paying any part of the money due
on said mortgage ; so that by the terms of the will, one half
of the debt is to be paid out of the estate of the testator.

By the other clause in the will the rest and residue of
the testator's estate is given to his five daughters, " providing
that if this residue shall exceed $ 1000 in value to each
daughter, then the overplus shall be divided among all the
testator's children, after firstly taking from such overplus
enough to clear the homestead farm for John, if *not other-
wise done.*"

The appellee's counsel contend that this last clause in
the will is to be construed as a repetition of the former
provision in the first clause ; and on the other hand, the
appellants claim a double legacy equivalent to the whole
amount due on the mortgage to Abigail Hale. We do not
think it necessary to give any opinion on the construction of
the will in this particular ; for upon the facts agreed, it ap-
pears to us that whatever may be the construction in this
respect, the appellants are not entitled to demand any thing,
under this last clause in the will. The object of this
clause appears to have been to preserve the homestead to
John, and thus to transmit the estate to the testator's pos-
terity in the male line ; and it never can be supposed to
have been intended for the benefit of John's creditors.
The testator's intention was *to clear the estate for John, if not
otherwise done ;* and admitting that this might be construed
as intending to direct the payment of the whole mortgage,
in case John should be unable to pay his moiety, still the
object was to clear the estate, so that John might hold and
enjoy it. Now this intention of the testator has been de-
feated by events. The estate is not to be cleared, for it

has been sold. John died insolvent, and his heirs can de‑ rive no benefit from the legacy. We cannot suppose the testator intending to prefer John's creditors to his other children, after he had before in his will given him what he considered as his full share of his estate. Legacies by implication are not to be supported, unless the testator's intention is clear, so that no other reasonable inference can be made.

Another objection has been made to the decree of the judge of probate, respecting which, however, we have no means for forming an opinion. The objection is, that there was not interest enough allowed in the legacy given by the first clause in the will. Interest was allowed from 1815, when large sales were made of the real estate by the executor. Our impression is, from the recollection of the facts which appeared in the settlement of the executor's accounts, that this is right ; and that the executor was not in funds to pay off legacies prior to those sales. But be this as it may, it is sufficient for the decision of this cause, that no facts appear upon which this last objection can be maintained, and the burden of proof is on the appellants.

*Decree of judge of probate affirmed*